**Robert V. VITOLO, M.D.,**
**Plaintiff–Appellant,**

v.

**MENTOR H/S, INC., Defendant–**
**Appellee.**

No. 06–1794–cv.

United States Court of Appeals,
Second Circuit.

Jan. 3, 2007.

Jonathan C. Scott, Scott & Scott, LLP, Smithtown, NY, (David A. Green, Law Offices of David A. Green, on the brief), New York, NY, for Plaintiff–Appellant.

Edward J. Sebold (Ashlie E. Case, Mark A. Whitt, on the brief), Jones, Day, Reavis & Pogue, Columbus, OH, for Defendant–Appellee.

PRESENT: Hon. JON O. NEWMAN, Hon. PETER W. HALL, Circuit Judges, Hon. DORA L. IRIZARRY, District Judge.*

## SUMMARY ORDER

Plaintiff–Appellant Dr. Robert V. Vitolo ("Vitolo") appeals from the grant of summary judgment to Defendant–Appellee Mentor H/S, Inc. ("Mentor") in this action concerning malfunctioning saline breast implants manufactured by Mentor and used by Vitolo in his breast augmentation practice. The following claims remained after half of the claims raised in the complaint were dismissed by stipulation: common law fraud, fraudulent inducement to enter into a contract, and violation of New York General Business Law § 349. We assume the parties' familiarity with the underlying facts and procedural history of this case.

We review the District Court's grant of summary judgment *de novo*. *See Steel Partners II, L.P. v. Bell Indus., Inc.*, 315 F.3d 120, 123 (2d Cir.2002). The District Court properly granted summary judgment in this case.

To state a claim under N.Y. Gen. Bus. Law § 349, a plaintiff must prove, among other things, that "the challenged act or practice was consumer-oriented." *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000). We agree with the District Court that Vitolo failed to raise an issue of material fact with respect to whether Mentor's alleged misrepresentation to Vitolo of the deflation rate of the implants in question was "consumer-oriented." The misrepresentation, if it did occur, had no "broader impact on consumers at large" than it did on Vitolo, and it did not have the potential to "affect similarly situated consumers" because the alleged misrepresentations regarding the MLV deflation rate were made to Vitolo in person, and Vitolo failed to produce evidence that Mentor's personnel made such representations to other doctors or to end users. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 27, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995). Only Vitolo and the limited group of his patients who were implanted with these particular

products—not members of the public at large—were affected. Moreover, no agency or consumer group was required to "undertake unnecessary investigations" or "divert [its] attention from its normal activities" because of the alleged misrepresentation. *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264–65 (2d Cir. 1995).

■ With regard to the fraud claims, New York has carved out a limited exception to the rule that one cannot succeed on a fraud claim merely by demonstrating a breach of contractual duties. Under that exception, a plaintiff must either "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir.1996) (internal citations and quotations omitted).

Vitolo has failed to meet any of these requirements. First, Vitolo failed to demonstrate that there was a public interest in assuring that the contract between him and Mentor be enforced giving rise to a separate duty of care. Unlike the central fire alarm monitoring services provided by New York City fire alarm companies, which contribute to the response time of the New York City Fire Department, the breast implants produced by Mentor do not risk the same kind of devastating effect on the public as faulty monitoring of fire alarm systems. Whether and how well they function are purely private matters. *Cf. Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 552–53, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (1992).

Second, Vitolo failed to demonstrate that there was a fraudulent misrepresentation collateral or extraneous to the contract. The deflation rate, which Vitolo contends was misrepresented to him, was directly related—not collateral—to the contract between him and Mentor. Even if the deflation rate was collateral to the contract, the District Court properly discounted the affidavit in opposition to the summary judgment motion, which was the only document in the record indicating that Vitolo had relied on the purported deflation rate in making his decision to buy the implants from Mentor. *See Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir.1996).

Finally, Vitolo does not seek special damages that were caused by the alleged inducement and are unrecoverable as contract damages. Although his complaint contained a demand for $100,000,000 in punitive damages, such damages did not constitute "indemnity for [the] loss suffered through th[e allegedly fraudulent] inducement." *Deerfield Communications Corp. v. Chesebrough–Ponds, Inc.*, 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 89, 502 N.E.2d 1003 (1986).

For the reasons stated above, the judgment of the District Court is hereby **AFFIRMED**.